OPINION *Page 2 
{¶ 1} Defendant-Appellant, Ray J. Sparrow, appeals from the trial court's granting of a Civil Protection Order ("CPO") against him. Susan L. Meyers is Plaintiff-Appellee.
 {¶ 2} Appellee lives across the street from Appellant. In June, 2007, Appellee and her husband, John, owned a Labrador Retriever puppy named "Jackie," who was approximately six and a half months old and weighed approximately 20 to 30 pounds. On June 30, 2007, Appellant shot and killed Jackie while she was on his property. Appellant stated that the dog had been on his property on several previous occasions and that she had never been aggressive towards him. Appellant further testified that the puppy had been friendly to him on previous occasions. Appellee and her husband both testified that Jackie was not aggressive and was good-natured.
 {¶ 3} Appellant testified that on June 30, 2007, he observed Jackie on his property swimming in his pond. The puppy jumped out of the pond, shook herself off, ran around the yard and then jumped back in the pond and swam some more. Once the puppy jumped out of the pond again, Appellant yelled at the dog, stomped his feet at it, and then the dog ran to the end of his driveway, back towards its owners' house. Appellant testified that he began throwing rocks at the dog and then turned back to work on his car because he thought that it was returning home. He testified that during all of this, the puppy was not acting aggressively towards him.
 {¶ 4} Appellant then stated that the puppy came back on his property and jumped up on his right shoulder, but that it did not do so in an aggressive manner. *Page 3 
Appellant backhanded the puppy, and it yelped and then barked and growled at him, but did not charge him or try to attack him.
 {¶ 5} Appellant then went into his workshop and grabbed his .22 caliber rifle and shot "a couple" of shots, shooting and killing Jackie. Appellant admitted that the dog did not follow him to the workshop nor did it try to attack him before he shot it. Appellant also testified that he could have closed the workshop door and that the dog would not have been able to reach him. After he shot the dog, he moved it to a ditch on his property line, where it was eventually discovered by Appellee's husband.
 {¶ 6} When he was questioned by the police, Appellant denied shooting the dog and admitted that the dog had been friendly towards him on previous occasions. Appellant testified that he has had a long history of reporting dogs in the neighborhood to the police and stated that he had been attacked previously by another neighbor's dog. However, when he was questioned by the court, he stated that he had never actually been physically attacked by a dog.
 {¶ 7} On October 28, 2007, Appellee was taking her new dog for a walk and walked past Appellant's yard while he was out mowing his lawn on a riding lawn mower. Appellant stopped his tractor, turned off the engine, and began speaking with Appellee. Appellant admitted to shooting Appellee's puppy and stated "I would shoot anything or anybody who comes on my property." Appellee confronted him about killing other neighborhood dogs and dumping them in the creek. Appellant smiled and stated, "They are not all in the creek." He further stated that no dog was ever going to get close to him and when Appellee told him there was something wrong with him, he responded, *Page 4 
"You are darn right, there is something wrong with me." He then brandished a knife at Appellee and mentioned something about a magnum gun.
 {¶ 8} Appellee testified that she was very upset because of this encounter and that she felt threatened and scared. Her husband testified that she was trembling and crying and had a hard time sleeping after the encounter.
 {¶ 9} Two neighbors, Justin and Elizabeth Kirby, witnessed part of the encounter. Justin testified that he heard Appellant say that he had the right to kill any dog and that he never heard Appellant tell Appellee that her dog was aggressive. Elizabeth testified that she observed the encounter from her kitchen window and that though she could not hear what was being said, she observed Appellant acting in an agitated manner, waving his hands around.
 {¶ 10} Testimony was adduced at the hearing that Appellant has a history of being aggressive towards neighborhood animals. Appellee's husband, John Meyers testified that in the early 1990s, he found a dead dog under Appellant's car that had been shot, and that the dog was still attached to its chain. Moreover, Appellant told Mr. Meyers that he shot his wife's dog and "blew his brains out." Appellant told Elizabeth Kirby that he shot his own dog. Elizabeth also testified that she has personally observed Appellant antagonizing her dogs when they were just beyond his property line and that she observed Appellant try to run her puppies over in the middle of the road by deliberately swerving towards them and accelerating his car.
 {¶ 11} After the October 28, 2007, encounter, Appellee filed a petition with the Ashland County Court of Common Pleas, seeking a civil protection order to protect herself and her family from Appellant based on the incidents where Appellant killed her *Page 5 
dog and then became verbally aggressive towards her and threatened her with a knife. A hearing was held where Appellee presented witnesses, including herself, her husband, Justin Kirby, and Elizabeth Kirby. Appellant presented witnesses, including his girlfriend, the Ashland County dog warden, and himself.
 {¶ 12} The court took the matter under advisement and issued a written decision, granting the protection order. The court issued findings of fact that accompanied the order, where the court found that Appellant shot and killed Appellee's dog in June, 2007. The court found that by Appellant's own admission, the puppy was not "chasing or approaching in a menacing fashion or apparent attitude of attack." The court also noted in its findings of fact that Appellant made the following four statements: (1) "It's crazy around here, the neighborhood is exploding"; (2) "Dogs are attacking me"; (3) "Can't enjoy our property any more"; and (4) "I'll shoot any dog I feel afraid of." The court further found that Appellant "never stated in court that he had ever been bitten by a dog at any time." Based on these and other findings enumerated in the court's decision, the court found that Appellant engaged in a pattern of conduct, using deadly weapons (specifically a rifle and a knife) and caused mental distress to Appellee that warranted the issuance of a CPO pursuant to R.C. 2903.214.
 {¶ 13} Appellant now raises the following seven Assignments of Error:
 {¶ 14} "I. THE MAGISTRATES [SIC] DECISION AS APPROVED BY THE TRIAL COURT ERRORED [SIC] AS A MATTER OF LAW IN FINDING RESPONDENT-APPELLANT, RAY J. SPARROW, HAD ENGAGED IN A PATTERN OF CONDUCT AS REQUIRED [SIC] O.R.C. 2903.211 BY ENGAGING IN COMDUCT [SIC] OF TWO OR MORE ACTIONS OR INCIDENTS. *Page 6 
 {¶ 15} "II. THE MAGISTRATES [SIC] DECISION AS APPROVED BY THE TRIAL COURT ERRORED [SIC] IN THAT THE MAGISTATE'S [SIC] FINDINGS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 16} "III. THE FINDINGS OF FACTS ARE NOT SUFFICIENT FOR THE COURT TO MAKE AN INDEPENDENT JUDGMENT OF THE ISSUE IN ORDER TO APPLY THE APPROPRIATE LAW TO CONFIRM THE MAGISTRATES [SIC] DECISION AS APPROVED BY THE TRIAL COURT.
 {¶ 17} "IV. THE MAGISTRATES [SIC] DECISION AS APPROVED BY THE TRIAL COURT ERRORED [SIC] IN MAKING A DETERMINATION IN THE FINDING OF FACTS AS TO WHETHER RESPONDENT-APPELLANT, RAY J. SPARROW, HAD A LEGAL RIGHT TO KILL THE PRTITIONER-APPELLEE [SIC], SUSAN L. MYERS [SIC], DOG.
 {¶ 18} "V. THE MAGISTRATES [SIC] DECISION AS APPROVED BY THE TRIAL COURT ERRORED [SIC] IN ORDERING AN ORDER OF PROTECTION UNDER O.R.C. 2903.214(F)(2), WHERE THERE IS NO EVIDENCE RESPONDENT-APPELLANT, RAY J. SPARROW, EVEN KNOWINGLY CAUSE [SIC] PETITIONER-APPELLEE, SUSAN L. MYERS [SIC] TO BELIEVE RESPONDENT-APPELLANT, RAY J. SPARROW, WOULD CAUSED [SIC] ANYONE PHYSICAL HARM OR MENTAL DISTRESS.
 {¶ 19} "VI. THE MAGISTRATES [SIC] DECISION AS APPROVED BY THE TRIAL COURT ERRORED [SIC] IN FINDING THE RESPONDENT-APPELLANT, RAY J. SPARROW, HAS WHAT APPEARS BY THE FACTS OF THIS CASE A DUTY TO RETREAT IF ATTACKED BY A DOG. *Page 7 
 {¶ 20} "VII. THE MAGISTRATES [SIC] DECISION AS APPROVED BY THE TRIAL COURT ERRORED [SIC] IN NOT ADMITTING ADDITIONAL EVIDENCE IN THIS CASE AFTER THE DECISION OF THE MAGISTRATE."
 I, II, III, V {¶ 21} In Appellant's first, second, third, and fifth assignments of error, he challenges the evidence admitted at the hearing and argues that the evidence was inadequate to support the order of civil protection against him. We will address these challenges together.
 {¶ 22} The decision whether to grant a civil protection order lies within the sound discretion of the trial court. Shockey v. Shockey, 5th Dist. No. 08CAE070043, 2008-Ohio-6797, at ¶ 8, citingOlenik v. Huff, 5th Dist. No. 02-COA-058, 2003-Ohio4621, at ¶ 21. Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion. In order to find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 23} Moreover, a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson, 66 Ohio St.3d 610,1993-Ohio-9, 614 N.E.2d 742. The underlying rationale for giving deference to the findings of the trial court rests with *Page 8 
the knowledge the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.Seasons Coal Co. v. City of Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273; see also Jenkins v. Douglas, 3rd Dist. No. 9-06-55, 2007-Ohio-1909, ¶¶ 7-9; Kramer v. Kramer, 3rd
Dist. No. 13-02-03, 2002-Ohio-4383, ¶ 11.
 {¶ 24} The issuance of a civil stalking protection order is governed by R.C. 2903.214. Under this section, a person may seek civil relief for themselves, or on behalf of a family member, against an alleged stalker by filing a petition that alleges "that the respondent engaged in a violation of section 2903.211 of the Revised Code against the person to be protected by the protection order." R.C. 2903.214(C)(1). Ohio's menacing by stalking statute, R.C. 2903.211, states, "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211(A)(1). A pattern of conduct is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). Thus, there must be more than one incident to establish a "pattern of conduct" and obtain a civil stalking protection order.
 {¶ 25} The pattern of conduct can be as few as two incidents, and the statute does not specifically set forth what "closely in time" means. InState v. Dario (1995), 106 Ohio App.3d 232, 665 N.E.2d 759, the First District determined that the trier or fact must decide on a case-by-case basis in the context of all of the circumstances whether the instances are close in time. Similarly, in Middletown v. Jones, *Page 9 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, the Twelfth District stated that the trier of fact should consider the totality of the circumstances of the case when determining whether the incidents were closely related in time.
 {¶ 26} In the present case, the trial court determined that Appellee had presented sufficient evidence to show that Appellant engaged in a pattern of conduct that caused her to suffer mental distress. Specifically, the magistrate found as follows:
 {¶ 27} "1. Respondent shot and killed Petitioner's dog in June 2007, when the dog, a Labrador puppy weighing between 20 and 30 pounds, came onto Respondent's property.
 {¶ 28} "2. By Respondent's own testimony, the puppy was not `chasing or approaching in a menacing fashion or apparent attitude of attack' (see ORC 955.28) when Respondent shot and killed the dog. The dog was standing still, barking and growling, six to eight feet from Respondent, when Respondent retrieved his .22 rifle from his garage and shot the dog. The dog was shot in Respondent's driveway, but was found in a creek on the edge of Respondent's property. During Respondent's description of the dog's shooting, Petitioner began loudly sobbing.
 {¶ 29} "3. Respondent denied to investigating Ashland County Sheriff's Office personnel that he killed Petitioner's dog. Respondent explained this at hearing by stating that he did not know it was Petitioner's dog.
 {¶ 30} "4. Petitioner and Respondent had a discussion on October 28, 2007, with Petitioner walking her new dog in the road in front of Respondent's house. Respondent was mowing his lawn. During the conversation, Respondent displayed a large knife which he stated he carries at all times while mowing. Petitioner was *Page 10 
frightened by this behavior, and took it as a threat. Respondent insists he showed Petitioner the knife only to communicate that he had to defend himself against aggressive dogs in the area.
 {¶ 31} "5. Petitioner's husband testified that Petitioner was scared and trembling after this conversation with Respondent, and had trouble sleeping.
 {¶ 32} "6. Another neighbor of both parties, Justin Kirby, testified that he heard Respondent tell Petitioner in this conversation, `If I want to, I can shoot the dog.'
 {¶ 33} "7. Mr. Kirby's mother testified that Respondent had previously told her that he had shot his own dog, and that she saw Respondent swerve to attempt to run over puppies crossing the road in front of his house.
 {¶ 34} "8. Respondent alleges that Petitioner stated `I ought to shoot you' after finding out Respondent killed her dog.
 {¶ 35} "9. Respondent made the following statements during his testimony: (a) `It's crazy around here, the neighborhood is exploding'; (b) `Dogs are attacking me'; (c) `Can't enjoy our property anymore'; (d) `I'll shoot any dog I feel afraid of.'
 {¶ 36} "10. Respondent never stated in court that he had ever been bitten by a dog at any time.
 {¶ 37} "11. This Court finds that Respondent's killing of Petitioner's dog, by his own testimony, was not in compliance with ORC 955.28.
 {¶ 38} "12. This Court finds that Respondent has engaged in a pattern of conduct, using deadly weapons, namely a rifle and a knife, which has caused mental distress to Petitioner, sufficient that a Civil Stalking Protection Order is warranted pursuant to ORC 2903.214." *Page 11 
 {¶ 39} Appellant filed written objections to the magistrate's decision. The trial court, in overruling Appellant's objection with respect to whether sufficient evidence was introduced to prove a pattern of conduct with resulted in mental distress to Appellee, stated, "The Petitioner established that the Respondent shot and killed her 6 ½ month old puppy who was not behaving aggressively; Respondent moved the dog's body to a ditch and left it to be found; Respondent denied shooting the dog when questioned by law enforcement; Respondent admitted to shooting the puppy to the Petitioner, stating that `I would shoot anything or anybody who comes on my property.'(Transcript, page 7); Respondent brandished a knife at the Petitioner and mentioned something about having a gun. This behavior constitutes a pattern of conduct. It is more than one incident and the Petitioner testified that she was in fear of physical harm and that she suffered mental distress in connection with Respondent's conduct. The Magistrate's conclusion that the Petitioner was more credible than the Respondent will not be disturbed by this Court absent abuse of discretion and no such abuse has been demonstrated. The evidence was sufficient to establish that the Respondent committed the offense of menacing by stalking such as to warrant issuance of a civil protection order." Judgment Entry, filed August 11, 2008.
 {¶ 40} We will not substitute our judgment for that of the trial court. The trial court is in the best position to weigh the credibility of the witnesses and the weigh the evidence. Upon review of the evidence, we find that the trial court did not abuse its discretion in issuing the civil protection order. Appellant's first, second, third, and fifth assignments of error are overruled. *Page 12 
 IV VI {¶ 41} In his fourth and sixth assignments of error, Appellant asserts that he was justified in killing Appellee's puppy and that the trial court erred in failing to find that he was justified in doing so. We find the evidence does not support this contention.
 {¶ 42} Ohio Revised Code 955.28(A) allows for the killing of another person's dog in limited circumstances. Specifically, R.C. 955.28(A) states, in pertinent part, "a dog that is chasing or approaching in a menacing fashion or apparent attitude of attack, that attempts to bite or otherwise endanger, or that kills or injures a person or a dog that chases, threatens, harasses, injures, or kills livestock, poultry, other domestic animal, or other animal, that is the property of another person, except a cat or another dog, can be killed at the time of that chasing, threatening, harassment, approaching, attempt, killing, or injury. If, in attempting to kill such a dog, a person wounds it, the person is not liable to prosecution under the penal laws that punish cruelty to animals."
 {¶ 43} Again, we review the trial court's determination under an abuse of discretion standard. In so doing, we find that the evidence adduced at the hearing supports the trial court's determination that Appellant did not have cause to shoot Jackie. Specifically, Appellant testified that on the date that he killed the puppy the puppy had been playing in his pond and yard. Once the puppy jumped out of the pond, Appellant yelled at the puppy, stomped his feet at it, and then the puppy ran to the end of his driveway, back towards its owners' house. Appellant testified that he began throwing rocks at the puppy and then turned back to work on his car because he thought that it was returning home. He testified that during all of this, Jackie was not acting aggressively towards him. *Page 13 
 {¶ 44} Appellant then stated that the puppy came back on his property and jumped up on his right shoulder, but that it did not do so in an aggressive manner. Appellant backhanded the puppy, and it yelped and then barked and growled at him, but did not charge him or try to attack him.
 {¶ 45} Appellant then walked away from the puppy, went into his workshop and grabbed his .22 caliber rifle and shot "a couple" of shots, shooting and killing the puppy. Appellant admitted that the dog did not follow him to the workshop nor did it try to attack him before he shot it. Appellant also testified that he could have closed the workshop door and that the dog would not have been able to reach him. After he shot Jackie, he moved it to a ditch on his property line, where it was eventually discovered by Appellee's husband.
 {¶ 46} When he was questioned by the police, Appellant denied shooting the dog and admitted that the dog had been friendly towards him on previous occasions.
 {¶ 47} From the time of the hearing onward, Appellant has persistently argued that he was justified in shooting the dog and has placed blame on Petitioner, the magistrate, and the trial court in denying his "right" to shoot the puppy. Certainly, if Respondent had proven that he shot the puppy in self-defense, then he would not be subject to a CPO. However, the trial court determined that his story was not credible and rejected his justifiable shooting excuse. Appellant has failed to demonstrate that the trial court abused its discretion in making this determination. Therefore, we will not disturb the trial court's ruling on this matter.
 {¶ 48} Appellant also asserts that he did not have a duty to retreat into his workshop in lieu of shooting the dog and that the trial court erroneously concluded that *Page 14 
he did have a duty to retreat. The trial court did not find that a citizen has a duty to retreat from a canine attack or a dog approaching in an aggressive manner. Rather, the court found that the dog was not approaching in an aggressive manner when Appellant killed it, thus the affirmative defense was not proven.
 {¶ 49} Moreover, we are not convinced that Appellant did not have a duty to retreat from this situation. As the Second District has stated in analyzing a similar argument, "A jury might reasonably infer that [defendant] could have retreated into his house without the necessity of killing the dog." Penny v. Fourman (1998), 2nd Dist. No. 98-CA1465. Appellant cites no case law to support his contention that he did not have a duty to retreat or to not shoot the puppy if another viable option (such as walking away from the puppy) presented itself. Appellant did, in fact, walk away from the puppy into his workshop, retrieved a rifle, and then came back out and approached the puppy and shot and killed it.
 {¶ 50} Appellant's arguments are not well taken and his fourth and sixth assignments of error are overruled.
 VII. {¶ 51} In his seventh assignment of error, Appellant argues that the trial court erred by failing to permit additional evidence after the magistrate issued a decision. We disagree.
 {¶ 52} Ohio Civil Rule 53(D)(4)(d) states, "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and *Page 15 
appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate."
 {¶ 53} In this case, Appellant filed objections to the Magistrate's decision on February 22, 2008. Appellee filed a response on March 11, 2008. Appellant then filed a "reply brief" on April 14, 2008, and included a self-serving affidavit alleging that Appellee allowed her new dog to trespass on Appellant's property months after the events leading up to the filing of the CPO and that on March 7, 2008, Appellee was convicted of a minor misdemeanor of allowing a dog to run at large.
 {¶ 54} Neither of these facts were relevant to the proceedings and would have been inadmissible should Appellant have attempted to introduce them at the CPO hearing.
 {¶ 55} Moreover, the trial court, in striking Appellant's affidavit, stated, "The Respondent did not ask the Court to take additional evidence before filing his affidavit, but he argues in response to the motion to strike that the Court is permitted to take additional evidence under Civil Rule 53. The Respondent is correct in that Civil Rule 53 permits the Court to "hear" additional evidence in connection with an objection. That rule does not permit the introduction of additional evidence in the form of uncontroverted statements in affidavits about matters which occurred subsequent to the original hearing." Judgment Entry, filed August 11, 2008. *Page 16 
 {¶ 56} The trial court did not err by refusing to permit this self-serving affidavit to be considered as evidence related to the issuance of the CPO. Appellant's seventh assignment of error is overruled.
 {¶ 57} For the foregoing reasons, we overrule Appellant's assignments of error and affirm the ruling of the Ashland County Court of Common Pleas.
 Delaney, J. Farmer, P.J. and Hoffman, J., concur. *Page 17 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Ashland County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1