[Cite as *Pluskota v. McVicker*, 2026-Ohio-441.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MATTHEW PLUSKOTA | Case No. 2025CA00080 |
| Plaintiff – Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2023 JCV 01381 |
| KAREN MCVICKER | |
| Defendant – Appellant | Judgment: Reversed and Remanded |
| | Date of Judgment Entry: February 11, 2026 |

**BEFORE:** ANDREW J. KING, P.J., KEVIN W. POPHAM, J., WILLIAM B. HOFFMAN, J.; Appellate Judges

**APPEARANCES:** ARNOLD GLANTZ, for Plaintiff-Appellee; HENNA R. SCHAFER, SHANNON R. DILLON for Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}    Appellant Karen McVicker ("Mother") appeals the June 18, 2025, judgment entry of the Stark County Court of Common Pleas, Family Court Division.  Appellee is Matthew Pluskota ("Father").  For the reasons below, we reverse and remand to the trial court for proceedings consistent with this opinion.

*Facts & Procedural History*

{¶2}    Mother and Father are the parents of one child, A.P., who was born on September 17, 2023.   Mother moved in with Father and his then-wife in late 2022.  A.P. was conceived while Mother was living with Father and his wife.  Initially, after A.P'.'s

birth, Father regularly visited with A.P. However, in November of 2023, Mother stopped allowing Father to visit the child.

{¶3} On November 30, 2023, Father filed a complaint for the allocation of parental rights and responsibilities and for parenting time. Mother filed an answer and counterclaim. The trial court appointed John Frank as guardian ad litem ("GAL") for A.P.

{¶4} Initially, due to pending criminal charges against Father, the trial court limited Father to supervised visitation through the court's supervised visitation program. In June of 2024, after Father completed six supervised visits and the criminal charges were resolved, the court granted Father unsupervised visitation every Sunday for four hours. Exchanges occurred at the Jackson Township Police Department.

{¶5} On March 10 and 14, 2025, the magistrate conducted a trial on Father's complaint and Mother's counterclaim. The following testimony was adduced at trial.

{¶6} Father testified that Mother worked with his now ex-wife. Mother moved in with them, and Mother and Father soon began a romantic relationship. Father stated that he frequently saw A.P. immediately after her birth until November of 2023, when Mother told him he could no longer see the child. Father described an incident on November 7, 2023, during which he told Mother that he wished he had never had A.P. with her. Father testified that Mother was hitting him and threatening to kill herself.

{¶7} Father has four other children: one older child he has never seen, and two younger children whom he has not seen for six or seven years. After filing this case, Father suffered a stroke. He testified that he is seeing a psychiatrist who, according to Father, does not share the same concerns regarding his parenting abilities as Dr. Sayre – a licensed professional clinical counselor noted below.

{¶8} At the time of the hearing, Father had recently moved in with his then-girlfriend, now-wife, K.J. Father testified he is ready, willing, and able to care for A.P. during expanded parenting time, including overnight visits and mid-week visits. Father stated that, at the time of the hearing, the GAL had not met K.J., had not met her children, and had not visited her home.

{¶9} On cross-examination, Father admitted that he had been charged with domestic violence four times and convicted twice. He also admitted to convictions for unlawful restraint and assault, as well as several misdemeanor convictions over twenty years ago. Father acknowledged that he did not disclose this criminal history on his Parenting Proceeding Affidavit. He testified that this omission was unintentional, explaining that the original form was lost in the mail, and he forgot to include the convictions when completing the replacement form.

{¶10} Christine Sayre ("Sayre"), a licensed professional clinical counselor, conducted psychological evaluations of both Mother and Father. She diagnosed Father with antisocial personality disorder and described his prognosis as "unfavorable," citing concerns regarding impulsivity, lack of empathy and remorse, aggressiveness, and coerciveness. Sayre diagnosed Mother with post-traumatic stress disorder and described her prognosis as "favorable."

{¶11} Rosemary Diamond ("Diamond"), who supervised Father's visitation, testified Father did well during visits and she had no concerns about his ability to supervise A.P. Diamond stated Mother placed unreasonable demands on Father regarding visitation.

{¶12} Mother testified that Father physically, verbally, and sexually abused her throughout their relationship. She stated that when she attempted to leave the relationship, Father threatened her and physically restrained her. Mother also testified that she witnessed Father physically abusing his ex-wife while Mother lived in the home. Mother reported that she is in counseling for post-traumatic stress disorder and anxiety. She testified that Father should have only supervised visitation due to his criminal history, lack of relationship with his other children, and abusive behavior toward her.

{¶13} The GAL testified that it was in A.P.'s best interest for Father to continue with four hours of unsupervised visitation each week and on holidays. The GAL indicated that if Father completed anger management counseling and received positive evaluations, the court should consider expanded visitation.

{¶14} On April 12, 2025, the magistrate issued an entry containing detailed findings of fact and conclusions of law. The magistrate designated Mother as A.P.'s residential parent and legal custodian, and granted Father supervised parenting time once per week for four hours through a supervised or monitored service at Father's expense.

{¶15} The magistrate cited several reasons for requiring supervised visitation, including: Father's failure to fully disclose his criminal history to the GAL and Sayre; his lack of candor regarding counseling efforts; violent and sexually inappropriate statements; credible testimony that Father possessed firearms despite being legally prohibited from doing so; his inability to control anger; insufficient progress in counseling; and concerns that Father's behavior posed a risk to A.P.'s health and safety.

{¶16} On April 24, 2025, Father filed objections to the magistrate's decision - asserting generally that the decision was against the manifest weight of the evidence. The following day, Mother filed a motion for immediate relief from automatic stay, which the trial court granted. Father subsequently moved to vacate that judgment entry and sought sanctions, arguing Mother's counsel failed to provide Father with notice of the filing. On May 1, 2025, the court granted the motion to vacate and scheduled a hearing on Father's objections for June 16, 2025.

{¶17} On May 5, 2025, Mother filed a second motion for immediate relief. The trial court set the hearing for the same time as the objections hearing - June 16, 2025. On May 7, 2025, Mother filed a third motion, captioned "request for immediate hearing in front of the next available judge." The trial court scheduled a hearing for May 15, 2025. It appears from a judgment entry dated May 15, 2025, a hearing was held that day. However, the transcript of that hearing was not made part of the record on appeal.

{¶18} The trial court's May 15, 2025, judgment entry provides the following: the magistrate did not issue any interim orders relating to visits; supervised visits were not an order of the court until the magistrate's decision was issued; and the GAL suggested a compromise pending objection. The trial court further stated, "if visits occur at his [Father's] home or a home he is residing in, any guns shall be removed from the premises. Pending objecting hearing, Father shall have supervised visits Sunday from 1PM until 5PM, with [K.J.] providing supervision. GAL shall fully explain responsibilities for supervising visits."

{¶19} On May 16, 2025, the GAL filed a document titled "Notice to the Court." ("Notice"). In the Notice, the GAL stated he had explained the "eyes-on" supervision

requirement to K.J. and had visited her home, which he deemed safe and appropriate for visitation. The GAL stated in the Notice that he "believe[s] that [K.J.] is an appropriate parenting time supervisor, and her home will be a very safe and comfortable setting for [A.P.]" The Notice was docketed on the court's public docket and e-mailed to both counsel for Mother and counsel for Father.

{¶20} On June 16, 2025, the trial court held a hearing on Father's objections and on his motion for sanctions. At the hearing, Father's counsel argued the magistrate's decision regarding visitation was against the manifest weight of the evidence and asked the trial judge to grant Father unsupervised visitation. Counsel for Mother argued the objections to the magistrate's decision should be overruled. The GAL appeared at the hearing. Importantly, neither party was able to question him about the Notice or about his updated visitation recommendation. The trial judge took the matter under advisement and stated she needed to review the trial transcript before making her decision.

{¶21} On June 18, 2025, the trial judge issued a decision – finding that while the actions of Mother's counsel "puts credibility at issue," and the behavior was "discourteous," such discourteous behavior did not violate the rules and, thus, denied Father's motion for sanctions. However, the trial judge issued a "verbal reprimand" to Mother's counsel. As to Father's objections, the trial court found as follows:

> Having made an independent analysis of the facts and the applicable law, denies the objection with modification of the decision, below, and hereby approves and adopts the magistrate's decision with the modification and orders it entered as a matter of record. If visits occur at Father's home or a home he is residing in, any guns shall be removed from the premises.

Father's supervised visits on Sundays from 1PM until 5PM will occur with [K.J.] providing supervision. Both parties are ordered to complete the treatment recommendations of Ms. Sayre, with a copy of both Ms. Sayre's report and the GAL report provided to any treatment providers. Parties must contact the GAL for his release of his report and Ms. Sayre's report, and the GAL is ordered to release both reports to treatment providers.

{¶22} On July 17, 2025, Mother filed her notice of appeal of the trial court's June 18, 2025, judgment entry.

{¶23} On October 3, 2025, Mother filed with this Court a "Motion for Immediate Modification of Trial Court Decision or, in the alternative, for Remand", in which Mother provided documentation that on October 2, 2025, Father was arrested and charged with domestic violence - the victim was K.J., the individual who was supposed to supervise Father's visits with A.P. The documentation further noted that Father was to have no contact with K.J. Mother also provided a message she received from Father via the Our Family Wizard on October 4, 2025, in which Father stated that there was "sickness" in his house, and, thus, his Sunday visit with A.P. would have to be rescheduled. However, at the time Father was actually incarcerated in the Stark County Jail.

{¶24} On October 9, 2025, this Court issued a judgment entry finding the visitation order was an impossibility because there was a no-contact order between Father and K.J. Accordingly, we (1) granted the motion to suspend visitation and (2) remanded the matter to allow the trial court to modify its original judgment entry, if it chose to do so.

{¶25} Upon our remand, the trial court initially issued an ex parte order suspending Father's visitation with A.P. because Father posed an "imminent physical

safety risk." The trial court set the matter for hearing on October 29, 2025. Father did not appear for the hearing. After the hearing, the magistrate issued an order modifying the trial court's original (June 2025) entry. The magistrate found that K.J. was no longer a suitable supervisor for Father's visits with A.P. The magistrate ordered - (1) Father's parenting time is suspended until further order of the court; and (2) Father may petition the court for parenting time if he is interested in further parenting time. Father did not file objections to the magistrate's decision. It appears as if the trial court intended this magistrate's order to be a modification of its original visitation order (June 18, 2025), as permitted by this Court in our judgment entry granting a limited remand. However, the magistrate's order was not signed or adopted by the trial court as required by Civil Rule 53(D)(4)(a), which provides that a magistrate's decision is not effective unless adopted by the trial court.

{¶26} As noted above, Mother appeals the June 18, 2025, judgment entry of the Stark County Court of Common Pleas, Family Court Division, and assigns the following as error:

{¶27} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN MODIFYING THE MAGISTRATE'S DECISION WHERE CREDIBLE AND COMPETENT EVIDENCE SUPPORTED THE ADOPTION OF THE MAGISTRATE'S DECISION WITHOUT MODFICIATION."

{¶28} "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED THE OBJECTIONS TO THE MAGISTRATE'S DECISION, BUT STILL MATERIALLY MODIFIED THE MAGISTRATE'S DECISION AND ADOPTED THE GAL'S POST-LITIGATION RECOMMENDATION."

{¶29} "III.   THE TRIAL COURT ABUSED ITS DISCRETION WHEN ITS FINDINGS OF FACT AND CONCLUSIONS OF LAW FAIL TO EXPLAIN THE REASON FOR MODIFYING THE MAGISTRATE'S DECISION."

{¶30} Because we find Mother's second assignment of error dispositive, we will address the assignments of error out of order.

II.

{¶31} In her second assignment of error, Mother argues the trial court abused its discretion in basing its decision regarding visitation upon the GAL's post-trial recommendation without permitting Mother to cross-examine the GAL or argue her position as to the new visitation recommendation contained in the Notice.

{¶32} Of course a trial court has the inherent authority to manage its own proceedings and control its own docket. *Love Properties, Inc. v. Kyles*, 2007-Ohio-1966, ¶ 37 (5th Dist.).  Further, the trial court clearly has discretion under Civil Rule 53(D)(4)(b) and (d) to take additional evidence before ruling on objections to a magistrate's decision. *Rafeld v. Sours*, 2014-Ohio-4242, ¶ 21 (5th Dist.).  This is because "new events may arise or be discovered between the time of a magistrate's decision and a trial judge's final judgment, and the rule provides a mechanism for the introduction of such evidence in a timely manner." *Morrison v. Morrison*, 2014-Ohio-2254, ¶ 26 (9th Dist.).

{¶33} While such additional evidence is, in the trial court's discretion, admissible and permitted by the civil rules, the use of such evidence is not without limitation. *Kolano v. Vega*, 2016-Ohio-356, ¶ 23 (5th Dist.).  We review decisions regarding the trial court's admission or exclusion of additional evidence under an abuse of discretion standard. *Id*. This Court has held that while Civil Rule 53 permits the trial court to hear additional

evidence in connection with an objection, the "rule does not permit the introduction of additional evidence in the form of uncontroverted statements in affidavits about matters which occurred subsequent to the original hearing." *Meyers v. Sparrow*, 2009-Ohio-945, ¶ 55 (5th Dist.). Likewise, we have held a trial court cannot consider ex parte materials when taking additional evidence after a magistrate's decision. *Gerling & Assocs. v. S&R Servs.*, 2009-Ohio-1897, ¶ 39 (5th Dist.).

{¶34} Other courts have addressed limitations on the "additional evidence" concept. The Ninth District held that "basic notions of fairness and common sense" suggest that when additional evidence is submitted after objections to the magistrate's order, a hearing must sometimes be conducted so the parties can cross-examine witnesses. *In re A.S.*, 2013-Ohio-1975, ¶ 26 (9th Dist.). The Ninth District also held that Civil Rule 53 does not contemplate that a trial court can consider an unsworn statement that contradicts prior testimony heard during an evidentiary hearing in front of a magistrate. *Pagonis v. Steele*, 2012-Ohio-4252, ¶ 9 (9th Dist.). The Tenth District held that a GAL could provide additional evidence concerning his recommendation to a trial court after a magistrate's decision because the parties were able to present arguments about this additional evidence and were permitted to cross-examine the GAL concerning his updated recommendation. *Anderton v. Hatfield*, 2007-Ohio-7139, ¶ 23 (10th Dist.)

{¶35} Here, the trial court clearly relied upon information contained in the May 16, 2025, Notice because the language regarding visitation in the trial court's entry mirrors that contained in the Notice.

{¶36} Several factors lead us to the conclusion that the trial court abused its discretion in considering the new evidence in this case without providing Mother with the

opportunity to argue regarding the updated recommendation and to cross-examine the GAL on his updated recommendation. First, Father's objections to the magistrate's decision were not compliant with Civil Rule 53(D)(3)(b)(ii) because they were not "specific" and did not "state with particularity all grounds" for the objections. Father simply stated the magistrate's decision "was against the manifest weight of the evidence." Thus, Mother was unaware of Father's specific objections until she appeared at the June 16, 2025, hearing. Further, no hearing was held regarding the Notice and updated recommendation. While the Notice was filed prior to the objections hearing, there was no discussion at the June 16, 2025, objections hearing of either the Notice or the possibility of K.J. being the visitation supervisor. In fact, K.J.'s name was not mentioned at all during the June hearing. Next, while the GAL appeared at the objections hearing, he was not subject to questioning about the Notice or his updated recommendation, and Mother was not permitted to cross-examine him.

{¶37} Due to Father's criminal background and concerns expressed by Sayre, a substantial portion of the March 10, 14, 2025 trial before the magistrate centered around whether Father's visitation should be supervised or unsupervised and who should supervise the visits. In exercising its authority to take additional evidence, the "trial court's discretion must be exercised in a manner which best protects the interest of the child." *Flynn v. Flynn*, 2004-Ohio-3881, ¶ 15 (10th Dist.) Given the significance of the additional information submitted by the GAL as to who may be a suitable supervisor for Father's visits with A.J., the trial court should have permitted the parties to argue their positions and permit the parties to cross-examine the GAL on his updated recommendation. Given the seriousness of Father's criminal history and the concerns of Sayre, this would best

protect the interest of A.P.  See *In re A.S.*, 2013-Ohio-1975 (9th Dist.).  We find the trial court's consideration of the GAL's updated recommendation, without providing the parties the opportunity to argue their positions or question the GAL about this recommendation, is akin to the type of evidence this Court previously found impermissible in *Meyers*.

{¶38}  Mother's second assignment of error is sustained.

### I. & III.

{¶39}  In Mother's first and third assignments of error, she challenges the trial court's modification of the magistrate's order with regards to A.P.'s visits with Father. Based upon our disposition of Mother's Assignment of Error II, we need not address Mother's first and third assignments of error.

{¶40} Based on the foregoing, Mother's second assignment of error is sustained. For the reasons stated in our Opinion, the judgment of the Stark County Court of Common Pleas, Family Court Division, is Reversed and Remanded for proceedings consistent with this opinion.

Costs to Appellee/Father.

By: Popham, J.,

King, P. J., and

Hoffman, J., concur