[Cite as *In re A.S.*, 2013-Ohio-1975.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: A.S.

C.A. No.    26462

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 09-10-0823

DECISION AND JOURNAL ENTRY

Dated: May 15, 2013

CARR, Judge.

{¶1}   Arvis S. appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed his son, A.S., in the legal custody of relatives.  This Court reverses and remands.

I.

{¶2}   Stephanie W. ("Mother") and Arvis S. ("Father") are the parents of A.S., born September 4, 2008.  Only Father has appealed.  Mother participated in the proceedings below, but has not appealed.

{¶3}   Summit County Children Services Board ("CSB") initiated this action with a complaint filed in juvenile court on October 9, 2009, alleging that A.S. was dependent and neglected.  The child had recently been removed from Mother's home by the local police due to an argument between his parents.  The trial court adjudicated A.S. to be dependent and granted temporary custody to the agency.  The child was initially placed with a foster family, and within

six months, was placed with Mary P. and Carl P., the child's maternal great aunt and great uncle ("Relatives").

**{¶4}** Several motions for legal custody were filed by CSB, Mother, and Father amidst two six-month extensions of temporary custody and efforts towards mediation. Eventually, CSB's motion for legal custody to Relatives and Father's motion for legal custody to himself were heard by a magistrate of the juvenile court on May 10, 2011. During that hearing, Mary P. testified that she was willing to assume legal custody of A.S. on a permanent basis and to allow visitation by the parents. In addition, Relatives executed a written statement of understanding, accepting responsibility to care for the child until maturity and acknowledging the parents' residual rights. *See* R.C. 2151.353(A)(3).

**{¶5}** On May 19, 2011, the magistrate entered a decision granting legal custody to Relatives. Father filed objections to the decision, and the trial judge found merit in one of the objections: the magistrate's failure to permit the parties to cross-examine the guardian ad litem. The judge remanded the matter to permit the parties an opportunity to cross-examine the guardian ad litem. Following the hearing in which the parties cross-examined the guardian ad litem, the magistrate found that the information obtained made no difference on the question of legal custody. The trial judge adopted the decision the same day, subject to the filing of any objections by the parties. Father filed additional objections and thereby stayed the effect of the decision.

**{¶6}** Shortly before the hearing to cross-examine the guardian ad litem, Father filed a motion for contempt against Relatives for denying him visits with his son. The contempt matter was heard on January 25, 2012, by a different magistrate of the same juvenile court. During that hearing, Mary P. and Carl P. each plainly declared that they no longer wished to have legal

custody of A.S. That intention was confirmed by their attorney, who indicated that he would file a written motion to that effect. The magistrate closed the hearing by stating that she would consider any such motion from Relatives at an upcoming status hearing scheduled for February 13, 2012.

{¶7} On the day after the contempt hearing and the renunciation by Relatives, Father filed a motion with the trial judge, requesting that the judge delay her ruling on the objections to the magistrate's custody decision until the outcome of the upcoming status hearing was reached. In his supporting memorandum, Father explained that Relatives stated – on the record – that they were no longer willing to have legal custody of the child and that their attorney intended to file a motion to that effect. Father also indicated, in his motion, that the magistrate expected to address this matter at a status hearing on February 13, 2012.

{¶8} On February 6, 2012, the trial judge granted Father's requested delay. On the same day, Father filed a motion to change the disposition of the child and sought legal custody to himself. The caption of that motion included the name of the trial judge and the name of the second magistrate. In his motion, Father claimed that it was not in the child's best interest to remain in Relatives' care since they had denied any interest in pursuing legal custody. Father requested that his motion for change of disposition be heard at the February 13, 2012 status hearing. The agency did not respond to the motion. At the February 13, 2012 hearing, the magistrate declared that she would not hear Father's motion to change disposition because objections to the legal custody decision were pending before the trial judge.

{¶9} On May 2, 2012, the trial judge overruled Father's objections, which had been generated prior to Relatives' change of position, and granted legal custody to Relatives. Father now appeals and assigns three errors for review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING CHILDREN'S [SERVICES'] MOTION FOR LEGAL CUSTODY AND DENYING FATHER'S MOTION FOR LEGAL CUSTODY.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN AWARDING FATHER ITS STANDARD ORDER OF VISITATION.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR CHANGE OF DISPOSITION AND BY DOING SO DENIED APPELLANT DUE PROCESS OF LAW.

{¶10} We first address Father's third assignment of error because it is dispositive. In that assignment of error, Father argues that the trial court erred in denying him a hearing on his motion to change disposition. Father claims that Relatives' renunciation of their willingness to assume legal custody is significant to the trial court's determination of the child's custodial disposition and should have been explored in a hearing. In response, CSB argues that Father's motion is moot because, at some point prior to the hearing, Relatives again changed their position. CSB's contention is evidenced in the record only by the absence of any filing by Relatives indicating that they did not wish to assume custody of A.S., but is not supported by affirmative evidence.

{¶11} We disagree with the assertion that the motion is moot. By their own words, Relatives' commitment to providing a permanent home for A.S. was placed in doubt. The appropriate way to fairly address that doubt is through a hearing with the examination of witnesses. The question is not settled or rendered moot by the fact that Relatives may have changed their minds again. Legal custody is a permanent disposition and it is important to have

a full and fair evaluation of Relatives' commitment and the reasons for their changed positions before a permanent disposition is ordered.

{¶12} On the merits, we initially observe that the juvenile court retains jurisdiction over any child for whom the court issues certain orders of disposition until the child reaches maturity. R.C. 2151.353(E)(1). *See also* R.C. 2151.417(B). Pursuant to that continuing jurisdiction, the court may review at any time any aspect of the child's placement or custody arrangement. R.C. 2151.417(A). In conducting the review, the court "shall determine * * * whether any changes should be made" with respect to the child's placement or custody arrangement. *Id.* "Based upon the evidence presented at a hearing held after notice to all parties and the guardian ad litem of the child, the court may require [the parties] to take any reasonable action that the court determines is necessary and in the best interest of the child * * * ." *Id. See also* Juv.R. 14(C) (the court shall conduct a hearing and modify orders, sua sponte or upon motion, in accordance with the best interest of the child); Juv.R. 34(G) (permitting the parties to file a motion, or the court, sua sponte, to modify or terminate "any order of disposition").

{¶13} Furthermore, it has been said that R.C. 2151.353(E)(2) "provides a mechanism to modify or terminate" a juvenile court's dispositional orders. *See In re McBride*, 110 Ohio St.3d 19, 2006-Ohio-3454, ¶ 10. Such modifications are guided by the best interest of the child. *In re M.Z.,* 9th Dist. No. 11CA010104, 2012-Ohio-3194, ¶ 11, citing R.C. 2151.415(F) and R.C. 2151.417(B); *see also* R.C. 2151.42(A). R.C. 2151.353(E)(2) provides that "any party, * * * by filing a motion with the court, may at any time request the court to modify or terminate any order of disposition." R.C. 2151.353(E)(2). "The court may amend a dispositional order in accordance with [R.C. 2151.353(E)(2)] at any time upon its own motion or upon the motion of any interested party." R.C. 2151.417(B). Moreover, R.C. 2151.353(E)(2) embodies due process

protections in stating that the trial court "shall hold a hearing upon the motion * * * and shall give all parties to the action * * * notice of the hearing * * * ." R.C. 2151.353(E)(2). *See also* R.C. 2151.417(A); *In re Haller,* 3d Dist. No. 9-08-01, 2008-Ohio-4304, ¶ 44.

{¶14} Juv.R. 40 contemplates that new events may arise or be discovered between the time of a magistrate's decision and a trial judge's final judgment, and the rule provides a mechanism for the introduction of such evidence in a timely manner. *See* Juv.R. 40(D)(4)(b) and (d), and Civ.R. 53(D)(4)(b) and (d). This is reasonable, given the fact that a magistrate's decision is not a final order and may be revised. Juv.R. 40(D)(4)(a) ("magistrate's decision is not effective unless adopted by the court."); *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 379 (1981), fn. 1 (interlocutory orders are subject to change and may be reconsidered upon court's own motion or that of a party). Juv.R. 40(D)(4)(b) permits the court to "hear a previously-referred matter, take additional evidence, or return a matter to a magistrate" before taking action on a magistrate's decision.

{¶15} Furthermore, when objections have been filed, Juv.R. 40(D)(4)(d) provides:

Before [ruling on objections], the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

"Thus, * * * although a court has discretion to refuse to consider new evidence, a court does not have discretion to refuse to consider new evidence if the objecting party demonstrates that it could not, with reasonable diligence, have presented the evidence to the magistrate." *Welch v. Welch*, 4th Dist. No. 12CA12, 2012-Ohio-6297, ¶ 12. *See also Johnson-Wooldridge v. Wooldridge*, 10th Dist. No. 00AP-1073, 2001 WL 838986, *2 (July 26, 2001). In such a case, the court is required to hear the new evidence.

{¶16} Accordingly, R.C. Chapter 2151 and the juvenile rules of procedure recognize that matters involving child custody are fluid and may change. Through these provisions, the trial court is kept informed of matters that may help to avoid unnecessarily inaccurate or outdated decisions. When making any modification of a dispositional order, the key consideration for the court is the best interest of the child. *In re G.R.,* 8th Dist. No. 83146, 2004-Ohio-999, ¶ 21. In assessing such a motion, a determination of the best interest of a child "can only be accomplished by considering *all the evidence* concerning [the child's] custodial placement." (Emphasis added.) *Id.* at ¶ 26.

{¶17} It is plain that the evidence at issue could not have been presented at the prior dispositional hearing because it arose subsequent to that time. The evidence did not exist until Relatives spoke up at a contempt hearing that took place after the dispositional hearing, after the magistrate issued her decision, and after Father filed objections to that decision. Relatives' statements are undoubtedly relevant to the question of whether Relatives should, in fact, be granted legal custody. Therefore, a full examination of the reasons for that change and the apparent subsequent reversal by Relatives should have been conducted and made available to the trial judge before she made a final determination on the custodial disposition of the child.

{¶18} Ohio courts have allowed the record to be supplemented with evidence that arises during the interval between the magistrate's decision and trial court's judgment, an interval that unfortunately can last a year or more. *See, e.g., Welch v. Welch*, 4th Dist. No. 12CA12, 2012-Ohio-6297, ¶ 15 (allowing evidence of mother's relocation to a better school district taking place after the magistrate's hearing on question of residential parent); *Mizer v. Mizer*, 5th Dist. No. 08CA0004, 2009-Ohio-1390, ¶ 41 (husband's failure to notify court of his retirement occurring after magistrate's decision led to adoption of decision with inaccurate and outdated information);

*Noe v. Noe*, 5th Dist. No. 07-COA-047, 2008-Ohio-1700, ¶ 20 (trial court erred in denying new hearing on residential parent decision that was based on two-year old child care factors that no longer existed).

{¶19} The Fourth District has explained that the allowance of new evidence best serves the child. *Welch v. Welch*, 4th Dist. No. 12CA12, 2012-Ohio-6297, ¶ 17.

> [W]e believe that it serves the child's interest to permit a party to introduce evidence discovered subsequent to a magistrate's hearing, but before the trial court's final judgment. If the new evidence affects the child's best interests, and if the court has not finalized a judgment, to further delay the consideration of that new evidence and to require a party to file a motion to modify will further delay what might be in the child's best interests. *Id.*

{¶20} Not only is the consideration of evidence arising subsequent to the initial hearing before a magistrate in the best interest of a child, but it is also a matter of judicial economy. "Economy is better served if a trial court considers the new evidence when the magistrate's order remains interlocutory and before the court enters a final judgment." *Welch* at ¶ 19. *See also Jeffrey B. Peterson & Assoc. v. Dayton Metro. Hous. Auth.,* 2d Dist. No. 17306, 2000 WL 1006562, at *5 (July 21, 2000) (noting, approvingly, that the "matter was also raised at a time when the decision could have been easily modified, if needed"). Thus, Ohio courts have given weight to the principal of judicial economy and recognition to the fact that magistrate decisions may be reconsidered by permitting evidence arising between the magistrate's decision and the trial court's judgment to be heard.

{¶21} In the present case, when Relatives renounced their interest in assuming legal custody, the magistrate's decision granting legal custody to Relatives along with Father's objections to that decision were already pending before the trial judge. On the day after their renunciation, Father brought the new evidence to the attention of the trial judge. In his motion, he explained that Relatives were no longer willing to have legal custody of the child and that

they intended to file a document so stating. Father asked the trial judge to delay ruling on his pending objections until after the February 13, 2012 hearing at which the magistrate was expected to address this matter. On February 6, 2012, the trial judge granted Father's motion for a delay until after the February 13 2012 hearing, implicitly sanctioning the hearing and acknowledging that the hearing may have an impact on the custody decision, but taking no action to hear the motion herself.

{¶22} Later on the same day, Father filed a motion to change the disposition of the child and sought legal custody to himself instead. The motion was captioned with the names of both the judge and the second magistrate. In his motion, Father asserted that it was not in the child's best interest to remain in the care of Relatives who no longer wanted custody. Father requested that his motion for change of disposition be heard and suggested February 13, 2012, likely because that was the time set by the magistrate for consideration of Relatives' anticipated filing on the same subject. The agency did not respond to the motion.

{¶23} No hearing was conducted by either the magistrate or the trial judge at any time regarding Relatives' declaration that they no longer wanted to assume legal custody of A.S. As a result, the trial judge granted legal custody to Relatives without having an explanation of the reasons for Relatives' changes in positions on legal custody. Given the significance of Relatives' declaration and the pendency of the decision awarding legal custody to the same individuals, the trial court should have undertaken to conduct a hearing or have the magistrate conduct a hearing so that the resulting evidence could be considered in making a fair and appropriate decision regarding a permanent custodial disposition.

{¶24} Father might well have addressed this matter differently; however, we also recognize that a trial court has the inherent authority to control its own docket and manage the

cases before it. *Flynn v. Flynn*, 10th Dist. No. 03AP-612, 2004-Ohio-3881, ¶ 10, citing *Moyer v. Bristow*, 91 Ohio St.3d 3, 7 (2000). The trial court had authority to take additional evidence or return the matter to a magistrate for that purpose. Juv.R. 40(D)(4)(b). In exercising that authority, "the trial court's discretion must be exercised in a manner which best protects the interest of the child." *Flynn*, at ¶15, citing *Bodine v. Bodine*, 38 Ohio App.3d 173, 175 (10th Dist.1988).

{¶25} Nevertheless, Father brought Relatives' renunciation of interest in legal custody to the attention of the trial judge while the matter was still pending before her. Father filed another motion, with the judge's name affixed, seeking to change the disposition of A.S. for the reason that the named custodians no longer wanted custody. He requested to be heard on the matter and stressed the best interest of the child. Father's two motions essentially constitute a proffer of the evidence he sought to introduce and was entitled to introduce. *See Flynn*, at ¶ 22. Father's request that the motion be heard on February 13, 2012, was reasonable given that the magistrate announced that she would hear Relatives present the opposing side of the same matter at that time, and that the trial court had acknowledged the hearing in her order, essentially granting a stay until that time.

{¶26} Finally, basic notions of fairness and common sense suggest that when individuals who stood, at the time, as the named custodians in documents pending before the trial judge have just announced that they no longer wish to have that role, their willingness and appropriateness to serve as legal custodians should be explored on the record, including being subject to cross-examination, before a custodial disposition is finalized. To deny Father a hearing on this matter is putting form far over substance. It has been said that "a court that considers child custody or visitation issues should be guided by the child's best interests, not a technical requirement that

has the potential to actually negatively impact a child's best interests. *Welch v. Welch*, 4th Dist. No. 12CA12, 2012-Ohio-6297, ¶ 17. Under the unique facts of this case, Father should have been permitted to explore the mindset of Relatives in regard to their inclinations and suitability to assume legal custody of this child, and the trial court erred in failing to hear or to order a hearing on the new evidence.

{¶27} We caution that, while it may be possible that not every offering of "new evidence" will meet a threshold level of requiring a hearing, we need not reach that question in this case because the in-court declaration by the named legal custodians of their unwillingness to assume that status certainly meets that threshold. In addition, we do not mean to imply that we believe there is a problem with the child's current placement. We take no position on that issue, but simply find that circumstances warranted a further hearing as noted. Father's third assignment of error is sustained.

## III.

{¶28} Father's third assignment of error is sustained. Father's remaining two assignments of error are rendered moot. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for a full dispositional hearing.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
DONNA J. CARR
FOR THE COURT

MOORE, P. J.
BROGAN, J.
CONCUR.

(Brogan, J., retired, of the Second District Court of Appeals, sitting by assignment pursuant to §6(C), Article IV, Constitution.)

APPEARANCES:

DEREK CEK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

LINDA SELL, Attorney at Law, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.