[Cite as *In re A.S.*, 2013-Ohio-4170.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: A.S., JR.

C.A. No.    26731

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 09-10-0823

DECISION AND JOURNAL ENTRY

Dated: September 25, 2013

MOORE, Presiding Judge.

{¶1} Petitioner-Appellant, Arvis S., Sr. ("Father"), appeals from the November 21, 2012 judgment entry of the Summit County Court of Common Pleas, Juvenile Division. We affirm.

I.

{¶2} A.S., Jr., was born to Stephanie W. ("Mother") and Father on September 4, 2008. In 2009, A.S., Jr. was adjudicated dependent, and the juvenile court granted temporary custody to Summit County Children Services Board. After a brief time in foster care, A.S., Jr. was placed with Mother's aunt and uncle, Mary and Carl P. ("Relatives"). The juvenile court later granted Relatives legal custody, Father appealed, and this Court reversed and remanded to the court for further proceedings. *See In re A.S.*, 9th Dist. Summit No. 26462, 2013-Ohio-1975.

{¶3} Father also filed a motion for contempt against Relatives alleging that he was being denied visitation with A.S., Jr.

{¶4}    A magistrate of the trial court denied Father's motion, Father objected, and the trial court adopted the magistrate's decision.  In adopting the magistrate's decision, the trial court held that Father failed to present sufficient evidence that Relatives refused him visitation with A.S., Jr.  Rather, the trial court found that the evidence established that Father failed to exercise his visitation with A.S., Jr., during the specified time period.

{¶5}    Father appealed, raising one assignment of error for our consideration.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ADOPTING THE MAGISTRATE'S DECISION DENYING FATHER'S MOTION FOR CONTEMPT.

{¶6}    In his sole assignment of error, Father argues that the trial court erred in adopting the magistrate's decision that denied his motion for contempt.  Specifically, Father argues that the trial court demonstrated an arbitrary and unreasonable attitude in ignoring his undisputed testimony that Relatives rebuffed his efforts to visit A.S., Jr.

{¶7}    "This Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion." *Melick v. Melick*, 9th Dist. Summit No. 26488, 2013-Ohio-1418, ¶ 5, quoting *Young v. Young,* 9th Dist. Summit No. 25640, 2011-Ohio-4489, ¶ 5.  An abuse of discretion "implies that the [trial] court's attitude [was] unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). "Although the trial court has discretion when finding facts and applying those facts to the law, the trial court commits an error of law if it does not follow the law." *Foster v. Foster,* 9th Dist. Wayne No. 09CA0058, 2010-Ohio-4655, ¶ 6. "Issues of law are reviewed de novo."  *Melick* at ¶ 5, citing *Butler v. Butler,* 9th Dist. Summit No. 22087, 2004-Ohio-7164, ¶ 11.

{¶8} "Contempt of court may be defined as disobedience of a court order or conduct that brings the administration of justice into disrespect or impedes a court's ability to perform its functions." *Freeman v. Freeman,* 9th Dist. Wayne No. 07CA0036, 2007-Ohio-6400, ¶ 45, quoting *Willis & Linnen Co., L.P.A. v. Linnen,* 9th Dist. Summit No. 22452, 2005-Ohio-4934, ¶ 17. "Civil contempt is designed to benefit the complainant and is remedial in nature * * * [through the use of] fines or prison sentences which are conditioned upon performing some act." (Internal citations omitted.) *Schaffter v. Rush,* 9th Dist. Medina No. 04CA0028-M, 2004-Ohio-6542, ¶ 22. "This [C]ourt will not overturn a lower court's determination in a contempt proceeding absent an abuse of discretion." *Malson v. Berger,* 9th Dist. Summit No. 22800, 2005-Ohio-6987, at ¶ 6.

{¶9} Here, Father testified that he was to have visitation with A.S., Jr. every other weekend and on Wednesdays. However, in September of 2011, Father and Mary P. had a verbal altercation about Father allegedly keeping A.S., Jr. longer than his court ordered time. After the altercation, Father claimed that Relatives denied him visitation with A.S., Jr. until January of 2012.

{¶10} Father testified on direct examination as follows:

* * *

Q. Okay. Was – when you say an altercation, what are we talking about, a verbal argument?

A. A verbal argument, right.

Q. Okay. Who was present when this altercation took place?

A. [Mary P.] was present. Me and her had the conversation. Stephanie [W.] was present and –

Q. And who is Stephanie [W.]?

A. The mother.

Q.  Okay.  The mother of [A.S., Jr.]?

A.  Yes.  She was present and Toby [W.] was present, another relative of theirs.

* * *

Q.  Okay.  Since that day of the altercation, have you had visits with your son, prior to the time you filed your motion for contempt back in the court here?

A.  Once we came back to court, after I missed – I think I was refused like eight visits and then the court suggested that I get a makeup visit and start my visits back.  I have been getting them since then.

* * *

Q.  Okay. What did you do to try and get visits during that time period?

A.  Well, I tried contacting by phone, leaving messages.  I tried by mail.

* * *

Q.  So some point in that time period they moved?

A.  Yes.

* * *

Q.  Okay.  Did you find out their new address?

A.  Yes, I did.

* * *

Further, on cross-examination, Father testified:

* * *

Q.  Did you ever present yourself at [Relatives'] house and say I want visitation and they said no?

A.  Yes.

Q. And when did that happen?

A.  This happened the following Wednesday.

* * *

Q.  Answer my question.  How many times, after this altercation, to use your term, did you show up—

A.  Once.

* * *

{¶11}  Mother testified that she was present at the time of the verbal altercation between Father and Mary P., and they were arguing about visitation.  Mother also testified that, although Mary P. told Father to "get off her property," she did not tell him that he could never come back on her property.

{¶12}  Toby W., Mother's first cousin, was also present at the time of the verbal altercation between Father and Mary P.  He testified as follows:

* * *

Q.  Okay.  Did [Mary P.]—and I think you said at one point [Mary P.] told [Father] to * * * get off her property?

A.  Yeah, because they was arguing. They started arguing.

Q.  Okay. So basically [Mary P.] left [Father] with the impression he wasn't welcome there?

A.  No, I ain't going to say that.

Q.  Okay.

A.  I ain't going to say that.

Q.  How would you—

A.  [Father is] always welcome there.

* * *

{¶13}  Finally, Carl P. testified that he and Mary P. often allowed Father to have extra visitation with A.S., Jr., above and beyond what the trial court ordered.  He stated that he believed it was important for Father to spend time with A.S., Jr.:

* * *

Q. Do you want [Father] to visit with the child?

A. Oh, without a doubt.

Q. Okay.

A. A father should be with his son and we weren't doing this to stop him at all, none whatsoever.

Q. Well, that's the crux of the issue. Did you tell [Father] he can't visit with the child?

A. I have never told him that at all.

Q. Did you write him anything, e-mail him anything saying—

A. I didn't write him anything. I did not say anything to him. Even to this day I never told him that.

Q. Okay. Other than the incident that everybody has been referring to that happened in early September, well, let me ask you about that. Were you there?

* * *

A. No, I was on my second job.

Q. Okay. And other than that day has [Father] ever presented himself at your door and said I'm here to visit?

A. I think there was one time after that. I think it was that October, the latter— the earlier part of October.

Q. What happened?

A. He came. He visited with the child, then he left.

Q. Oh, so you allowed visitation?

A. Of course.

Q. Okay.

A. I never turned him away.

* * *

Carl P. also stated that he was not aware of his wife, Mary P., telling Father not to come back to their property again.

**{¶14}** Based upon the testimony of Father, Mother, Toby W., and Carl P., we cannot say that the trial court abused its discretion in adopting the magistrate's decision to deny Father's motion for contempt. Both Mother and Toby W. were present at the time of the altercation and stated that Mary P. never told Father he could not come back onto the property to visit with A.S., Jr. Further, Father testified that he only showed up one time after the altercation to attempt to visit with A.S., Jr. Finally, Carl P. testified that he never told Father not to come to their home to visit with A.S., Jr., and that he was not aware of Mary P. telling Father to stay away. Also, Carl P. indicated that Father did visit A.S., Jr. one time after the altercation, and that the visit was allowed. Therefore, the trial court's determination that Father did not provide sufficient evidence that Relatives denied him visitation with A.S., Jr. was not unreasonable, arbitrary or unconscionable.

**{¶15}** Accordingly, Father's assignment of error is overruled.

III.

**{¶16}** In overruling Father's sole assignment of error, the judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT


CARR, J.
HENSAL, J.
CONCUR.


APPEARANCES:

DEREK CEK, Attorney at Law, for Appellant.

LINDA SELL, Attorney at Law, for Appellee.

PHILLIP HERBAUGH, Attorney at Law, for Appellee.