[Cite as *In re S.T.*, 2025-Ohio-1379.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

In re S.T.

Court of Appeals No.  E-24-007

Trial Court No.  2016 JN 0034

**DECISION AND JUDGMENT**

Decided:  April 17, 2025

* * * * *

Loretta Riddle, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This is an appeal by appellant, A.W., mother of S.T., a minor child, from the December 26, 2023 judgment of the Erie County Court of Common Pleas, Juvenile Division.  For the reasons that follow, we reverse the juvenile court's judgment.

{¶ 2} Mother sets forth one assignment of error:

The trial court erred, abused its discretion, prejudiced mother and violated her constitutional right when it denied her motion for legal custody of her child over a non-parent.

## Background

{¶ 3} S.T. ("the child") was born in June 2015 to mother and father, R.T. Mother also has three sons, M.K., A.W., J.P.B., by two other men (M.K. and A.W. have the same biological father). Only the child is at issue in this appeal, but we will discuss facts regarding the other children to the extent they are relevant to the child's case.

{¶ 4} On June 13, 2016, the Erie County Department of Job and Family Services ("ECDJFS" or "agency") filed a complaint alleging the child was neglected and dependent. On that same day, a hearing was held wherein the child was removed from mother's Sandusky home, committed to the emergency temporary custody of the agency and placed in a foster home. M.K. was also removed from mother's care and placed in the foster home with the child, while A.W. and J.P.B. were removed and placed with J.P.B.'s biological father, J.B. Ultimately, J.B. received legal custody of A.W. and J.P.B.

{¶ 5} On July 12, 2016, an adjudicatory hearing was held, and the child was found to be dependent. On August 16, 2016, a dispositional hearing was held, and it was ordered that temporary custody of the child continue with the agency. The child remained in the foster home until July 12, 2017, when she was placed with M.R., a relative caregiver ("caregiver" or "custodian").

{¶ 6} On December 28, 2017, the agency filed a motion to join the caregiver as a party, terminate temporary custody and grant legal custody of the child to the caregiver. On January 26, 2018, mother filed a motion to return custody to her.

2.

**{¶ 7}** On October 9, 2018, the caregiver requested legal custody of the child and filed a "Statement of Understanding for Legal Custody R.C. 2151.353(A)(3)."

**{¶ 8}** On October 10, 2018, the juvenile court filed a judgment entry ("2018 entry") that included an agreement ("the Agreement") reached between, inter alia, mother, the caregiver, the agency, and the court. The Agreement provided for the caregiver to have legal custody of the child and mother to have visitation/parenting time with the child, which visits would initially be supervised, then progress to unsupervised. The Agreement consisted of nine clauses and clause 7 ("the Clause") set forth that mother "will seek to regain custody of [the child] when she has appropriate housing of her own and demonstrates stability by remaining drug free and having made significant progress in counseling." In the 2018 entry, the juvenile court ordered that the caregiver be granted legal custody of the child, and mother shall have visitation with the child at a minimum of two times a week for two hours.

**{¶ 9}** On February 22, 2021, mother filed a motion for legal custody of the child and a motion for contempt against the caregiver for denying mother parenting time with the child. On April 14, 2022, a hearing was held before the magistrate. On May 12, 2022, the magistrate issued an order for interim visitation for mother to have unsupervised visits with the child for a minimum of two weekdays, which would then increase to unsupervised visits every other weekend.

**{¶ 10}** On May 30, 2023, the magistrate issued a decision, recommending, inter alia: that the caregiver be found in contempt of court for interfering with mother's visits

3.

with the child from February 2021 through May 2021; that mother's motion for legal custody be denied; "that there is a change of circumstance that allows the court to then consider the best interest of the child"; and that it is still in the child's best interest that [the caregiver] remain the custodial parent of [the child.]"

{¶ 11} On July 14, 2023, mother filed objections to the magistrate's decision with respect to the legal custody recommendation.

{¶ 12} On December 26, 2023, the juvenile court issued a judgment entry overruling mother's objections and adopting the magistrate's decision denying mother's motion for legal custody of the child. In addition, the court found the caregiver in contempt for denying mother visits with the child and ordered that mother's visits be modified by agreement of the parties or in accordance with the standard schedule for parenting time.

{¶ 13} Mother appealed the legal custody ruling. Father is not a party to this appeal.

### Magistrate's Decision

{¶ 14} In his 31-page decision, the magistrate set forth, inter alia:

[Mother] filed a "Motion for Legal Custody, Support, ETC." Pursuant to R. C. §2151.23(A)(2) juvenile court has exclusive original jurisdiction to determine the custody of any child not a ward of another court of this state. R.C. §2151.23(F)(l) states, in relevant part, that "the juvenile court shall exercise its jurisdiction in child custody matters in accordance with section 3109.04 ... of the Revised Code."

R.C. §3109.04(B)(l) mandates that a Court, when allocating parental rights and responsibilities for the care of child [sic] in an original proceeding, shall take into account that which would be in the best interest of the child.

4.

However, as custody of the child was previously addressed in the [2018 entry], . . . the matter before the court is not an original proceeding.

R.C. §3109.04(E)(l)(a) mandates that a Court shall not modify a prior decree allocating parental rights and responsibilities for the care of [the] child unless it finds, based upon the facts that have arisen since the prior decree or that were unknown to the Court at the time of the prior decree; that a change has occurred in the circumstances of the child, the residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.

. . .

[Mother] argues that the [2018 entry] is a contract that specified certain requirements she had to reach in order to have her child back. . . . The Magistrate[] does not find this argument persuasive. First, if this [2018 entry] is to be considered a contract . . . any ambiguities would be construed against [mother's] interpretation. Second, [the Clause] merely states [mother] "will **seek** to regain custody." (Emphasis Added). Finally, in [the Clause] there is nothing that specifically says if [mother] does as stated that the parties will deem that a change in circumstance for modification of custody, this does not indicate a waiver of the change in circumstance requirement.

That all being said, in reviewing the matter [, the caregiver's] interference with visitation . . . coupled with the fact that [the caregiver] relocated to Fremont, Ohio without telling [mother] and [the caregiver] blocking [mother's] ways of communicating with [the caregiver] may be found to be a change in circumstance. First, this Magistrate having found that [the caregiver] is in Contempt of Court for interference with visitation from February 02, 2021 until May 6, 2021 is an event that is not contemplated at the time of the agreement and does call into question the issue of a change in circumstance [sic]. Second, while the Magistrate is aware that there is no court order for [the caregiver] to notify [mother] of when she moves, the Magistrate finds it troubling that [the caregiver] would not inform [mother] of where her child is living especially since the location is no longer even in the same city. Third, the Magistrate finds it troubling that [the caregiver] moved the child from Sandusky (without telling mother where she is going) and interfered with visitation times of [mother] all while simultaneously cutting off communication with [mother]. While each one of these factors individually (interference with custody, moving the child to Fremont, and cutting communication with [mother]), may not arise to a change of circumstance, this Magistrate finds that when they are taken together they

do rise to change of circumstance in the custodial parent, the change is of substance, and was not known at the time of [the] original proceeding.

Therefore, this Magistrate finds that a change in circumstance does exist. Thus, the Court must look to the best interest of the child to determine if a modification of custody is warranted.

In determining the best interest of a child, pursuant to R.C. §3109.04 . . . the court shall consider all relevant factors, including, but not limited to:

• R.C. §3l09.04(F)(l)(a) [parent's wishes]: mother desires to have the child back . . .and the custodian desires to retain custody.

• R.C. §3109.04(F)(l)(b) . . . an in[-]camera interview [of the child] was not conducted.

• R.C. §3109.04(F)(l)(c) [child's interaction with family and others who may significantly affect best interest]: the child has lived with [the caregiver] for close to the majority of her life and is integrated into [the caregiver's] family including spending time with the child's former foster parents. The child has not spent considerable unsupervised time with Mother, which is mother's complaint in this matter.

• R.C. §3109.04(F)(l)(d) [adjustment to home, school, community]: the child is currently enrolled in school in Fremont and involved in sports in the Fremont area.

• R.C. §3109.04(F)(l)(e) [mental and physical health of all persons involved]: there was no testimony as to any mental health or physical restrictions of the child nor [the caregiver]. [Mother] has been attending Firelands Counseling since 2017[,] . . . has completed IOP (intensive outpatient program) and is currently in individual counseling. It is reported by [mother's] counselor that [mother] is "stable" because she passes all of her drug screens, has solved some of her "issues" before the counselor even gets to see her, and [mother] is being productive in life. [Mother] has been on Suboxone since July 3 of 2019 [sic] and her last positive screen was early July of 2019.

• R.C. §3109.04(F)(l)(f) [parent more likely to honor parenting time and visitation rights]: having found [the caregiver] in Contempt for interference with visitation . . . the Magistrate would find [mother] more likely to honor parenting time.

• R.C. §3109.04(F)(l)(g) [child support payments]: [Mother] testified that she has paid her arears and is current in child support payments.

6.

• R.C. §3109.04(F)(1)(h) [parents' criminal background]: There was no evidence presented that [the caregiver] had a relevant criminal history or history with Jobs and Family Services. There was testimony as to police reports involving [mother] though there was no testimony as to any convictions of crimes. Also, the Court taking Judicial Notice of the Court's own Judgment Entries finds that the Judgment Entry on July 22, 2016 finds the child in this matter to be a Dependent child[.]

• R. C. § 3109. 04(F)(1)(i) [willful denial of parenting time]: the Magistrate has previously found [the caregiver] in contempt of court for interference of visitation as discussed above.

. . .

While the Magistrate finds that there is a change of circumstance that allows the court to then consider the best interest of the child, in weighing all of the factors of R.C. 3109.04(F)(1) the Magistrate finds that it is still in the child's best interest that [the caregiver] remain the custodial parent of [the child] and [mother's] Motion for Custody filed February 22, 2021, *as to custody* be **DENIED**. In reviewing this matter [mother] reports to have a stable home, stable employment, and been clean since July of 2019 and still engaged in recovery services provided by Firelands Counseling. These are all commendable and the court hopes she continues to make strides. However, the focus of custody modification is the best interest of the child. The child has spent almost the majority of her life with [the caregiver] and [mother] up to this point has only had limited supervised visitation with the child. The Magistrate is concerned about [the caregiver's] interference with visitation and hopes that contempt of court actions will address this concern. . . . In reviewing this matter this Magistrate finds that it is in the best interest of the child in this matter that visitation/parenting time be reexamined. [(Emphasis in original.)]

**Objections**

{¶ 15} Mother's objections to the magistrate's decision focused on three main issues: (1) additional changes in circumstances should have been found; (2) there was no finding that mother was unsuitable; and (3) additional evidence about mother's time with

the child, since the hearing, and another contempt motion against the caregiver, since the hearing, should have been considered.[1]

**Judgment Entry**

{¶ 16} In its December 26, 2023 judgment, the juvenile court set forth, in relevant part:

-Objections-

Mother's objections surround her Motion for Custody and argue three things. First, . . . the Magistrate should have made additional findings of a change in circumstance based on the evidence provided. Essentially, Mother argues that the [2018 entry], that awarded legal custody to [the custodian] . . . provided that Mother would regain custody after she met certain conditions about housing and completion of counseling. However, a review of the document reveals that the parties acknowledged that those conditions could trigger Mother's "request" (Motion) for a change, not that they would dictate the change. The law still applies and Mother has to prove, not only that there's been a change in circumstances, but also that the change is in the child's best interests and that any harm from the change ins outweighed by the benefits.

Further, the argument that Mother's conditions constitute a change of circumstance is flawed. As the Magistrate stated, a change in circumstance is something that the parties or the Court did not contemplate at the time of the [2018] entry. By including those conditions in the custody agreement, it is clear that the parties contemplated them, thus they do not constitute a change of circumstances even if they are accomplished. Further and more importantly, any changes in Mother's conditions are irrelevant. It is a change in the circumstances of the child or residential parent that are required under R.C. 3109.04(E)(1)(a). This objection . . . lacks merit.

Mother's second argument is that the Magistrate made no finding of parental unsuitability. This argument also lacks merit, as the Magistrate found, because this is not an original proceeding. Specifically, Mother was found unfit when her child was adjudicated a dependent child.

---

[1] Mother's arguments on appeal are virtually identical to the issues she raised in her objections.

Additionally, Mother again established her unfitness when she relinquished legal custody to a third party. This objection fails.

Lastly, Mother argues that the Court should take additional evidence. Mother references the delay in the Magistrates' [sic] Decision being entered and her recently filed Motion to Show cause as justification for taking additional evidence. However, Mother makes no argument that the evidence she'd like to present was in existence at the time of trial, which she acknowledged was necessary for her objection to prevail. While this objection fails in its argument, for different reasons, the Court does agree that further hearing is necessary to implement a transition plan for visitation, as discussed below [sic].

Having resolved the Objections, the Court conducted a review of the Magistrate's Decision[.]

. . .

-Motion for Legal Custody-

The evidence was clear that it is not in the child's best interest that custody be granted to Mother. The Magistrate made proper findings and the court approves them as well as his conclusion that Mother's Motion be denied as to custody. This conclusion is based primarily upon the criminally oriented chaos that continues in Mother's life and her ongoing need for active substance abuse treatment. The Court also notes that the child appears well integrated into the home and community of her legal custodian and any change to custody would involve harm that outweighs any benefit in the change, based on the evidence presented. Those conclusions are without considering that Mother failed to fully prosecute her Motion by failing to present any information about the financial aspects of custody which would be fatal to her Motion as well.

While Mother's Motion fails on a custody change it does raise concerns about the visitation orders which can be adjusted based solely on the child's best interests. The current orders clearly require[] the custodian to make certain determinations concerning [the] safety of the child, yet it didn't give her complete authority [to] address those concerns, instead it requires the agreement of the parties. The parties have drastically different opinions on what is safe and appropriate for the child to experience. Making matters worse, the evidence also established that, Mother alienated the custodian through harassment and intimidation early in the case. While the evidence established that the intimidation occurred while she was using drugs, Mother's criminal involvement in numerous police incidents after that has

not helped the custodian build the trust needed for the agreement to work. Mother's mistaken belief that she's automatically entitled to custody also contributes to the wedge between herself and the custodian. This breakdown in communication makes the visitation provisions unworkable and places the custodian at risk of contempt when she becomes frustrated with Mother's criminal circumstances and attitude.

The evidence clearly showed that visitation with Mother is in the child's best interests. The evidence also established that Mother, although far from perfect, has stabilized her drug usage by remaining abstinent for a significant time and this was the stated reason for restricting visits according to the current order. The home study recommends transitioning into normal unsupervised visitation and the Magistrate properly recommended this as well. However, as Mother argues in her third objection, much time has passed since the trial in this matter, and the parties appear to have moved forward to unsupervised visits, so further hearing is necessary to make orders that are compatible with the current visitation schedule being exercised by the parties. Ultimately, as recommended, the parties should be using the Court's standard Orders for Companionship to direct visitation. This change will eliminate the issues that are caused by requiring agreement of the parties[.]

**Standards**

{¶ 17} A trial court decision regarding legal custody of a child must be supported by a preponderance of the evidence. *In re. K.S.*, 2022-Ohio-2810, ¶ 18 (6th Dist.). A preponderance of the evidence is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it." *Black's Law Dictionary* (6th Ed. 1998).

{¶ 18} An appellate court must affirm a trial court's order granting legal custody unless the trial court abused its discretion. *In re H.H.*, 2024-Ohio-686, ¶ 64 (6th Dist.). An abuse of discretion means the trial court's judgment was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

10.

## Applicable Law

### Parental Rights

{¶ 19} Parents have a constitutionally protected due process right to make decisions regarding the care, control, and custody of their children, and parents' right to custody of their children is paramount to any custodial interest in the children which a nonparent may assert. *Troxel v. Granville*, 530 U.S. 57, 66 (2000).

### Legal Custody

{¶ 20} R.C. 2151.011(B)(21) defines legal custody as

> a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

{¶ 21} Residual parental rights include "the privilege of reasonable visitation[.]" R.C. 2151.011(B)(50).

{¶ 22} At the outset, we note that the magistrate and the juvenile court applied R.C. 3109.04(E)(1)(a) in their analyses of mother's motion for legal custody. However, R.C. 3109.04(E)(1)(a) applies to custody disputes arising out of divorce actions in domestic relations court, usually between parents. *See In re Perales*, 52 Ohio St.2d 89, 96 (1997).

{¶ 23} R.C. 2151.42 applies to situations where, like here, a child was adjudicated dependent under R.C. 2151.353 prior to an award of legal custody to a nonparent by the juvenile court. As a result of that adjudication, the juvenile court retains jurisdiction until

11.

the child is 18 years old.  R.C. 2151.353(F)(1).  R.C. 2151.42(B) states:

> An order of disposition issued under division (A)(3) of section 2151.353 . .
> . of the Revised Code granting legal custody of a child to a person is
> intended to be permanent in nature.  A court shall not modify or terminate
> an order granting legal custody of a child unless it finds, based on facts that
> have arisen since the order was issued or that were unknown to the court at
> that time, that a change has occurred in the circumstances of the child or the
> person who was granted legal custody, and that modification or termination
> of the order is necessary to serve the best interest of the child.

{¶ 24} Despite their application of R.C. 3109.04, we find, on the authority of *In re Brayden James*, 2007-Ohio-2335, that the magistrate and juvenile court engaged in the appropriate analyses.  In *Brayden James*, the Supreme Court of Ohio observed that an analysis under either R.C. 2151.42 or R.C. 3109.04 would be similar as both require a change in circumstances and consideration of a child's best interest.  *Id*. at ¶ 26.

**Change in Circumstances**

{¶ 25} The term "change in circumstance" is not defined in the Ohio Revised Code, but the Supreme Court of Ohio ruled that "the change must be a change of substance, not a slight or inconsequential change."  *Davis v. Flickinger*, 1997-Ohio-260.  Further, "[i]n determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change."  *Id.* at paragraph two of the syllabus.

{¶ 26} In *In re N.W.*, 2024-Ohio-2104, ¶ 12 (6th Dist.), this court recognized that

> "It is well-established that interference with the noncustodial parent's
> visitation rights may constitute a change of circumstances warranting a
> change of custody." *Jackson v. Herron*, 2005-Ohio-4046, ¶ 26 (11th Dist.),
> citing *In re[] Seitz*, 2003-Ohio-5218, ¶ 39 (11th Dist.) and *Hinton v.
> Hint[]on*, 2003-Ohio-2785, ¶ 13 (4th Dist.)[.] *See also Holm v. Smilowitz*,

12.

83 Ohio App.3d 757, (4th Dis.1992), citing *Lenzer v. Lenzer*, 115 Ohio App. 442 (1st Dist. 1962).

**Best Interest Factors**

{¶ 27} To determine the best interest of a child, courts have considered the best interest factors of R.C. 2151.414(D) and R.C. 3109.04(F)(1), a combination of them, and "'general notions of what should be considered regarding the best interests of the [child].'" *K.S.*, 2022-Ohio-2810, at ¶ 19 (6th Dist.), quoting *In re A.K.*, 2012-Ohio-4430, ¶ 25 (9th Dist.).

{¶ 28} The best interest factors of R.C. 3109.04(F)(1) were set forth and considered in the magistrate's decision. The best interest factors of R.C. 2151.414(D)(1), which the court shall consider, if relevant, include:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child[;]
>
> (c) The custodial history of the child[;]
>
> (d) The child's need for a legally secure permanent placement[.]

**Mother's Assignment of Error**

{¶ 29} Mother argues the juvenile court erred when it denied her motion for legal custody of the child, and offers three main assertions for the error: (1) the court failed to find changes in circumstance as per the 2018 entry; (2) mother was never found to be unsuitable so the best interest of the child standard did not apply, but if best interest should be considered, mother should be awarded legal custody; and, (3) the court denied

13.

mother's request for an additional hearing, with respect to her objections, when it incorrectly stated mother did not prove the evidence was available at the time of trial.

**Denial of Additional Hearing**

{¶ 30} Mother argues the trial court denied an additional hearing regarding her objections when it incorrectly stated that she did not prove the evidence was available at the time of trial. Mother contends the magistrate's decision was filed over 13 months after the hearing, and since that time, she had extended unsupervised visits with the child, which the trial court should have taken into consideration. Mother also asserts that since the hearing, she had to file another contempt against the caregiver for denying mother visitation with the child for an extended time.

{¶ 31} Juv.R. 40(D)(4)(d) provides:

Action on Objections. If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could **not**, with reasonable diligence, have produced that evidence for consideration by the magistrate. (Emphasis added.)

{¶ 32} This rule takes into account that new events may occur between the time of the magistrate's decision and the juvenile court's final judgment, and the purpose of the rule is to provide a way for the introduction of new evidence before the court issues its final judgment. *In re A.S.*, 2013-Ohio-1975, ¶ 14-15 (9th Dist.). "R.C. Chapter 2151 and the juvenile rules of procedure recognize that matters involving child custody are fluid and may change. Through these provisions, the trial court is kept informed of matters

14.

that may help to avoid unnecessarily inaccurate or outdated decisions." *Id.* at ¶ 16. Thus, a juvenile court is **required** to hear new evidence if the objecting party demonstrates that the party could not, with reasonable diligence, have presented this evidence to the magistrate. *Id.* at ¶ 15.

{¶ 33} Here, a review of the record shows that the evidence which mother sought to present at an additional hearing, about mother's unsupervised visits with the child and the caregiver's continued interference with mother's parenting time with the child, did not exist at the time of the hearing before the magistrate, so the evidence could not have been produced for the magistrate's consideration. In mother's third objection to the magistrate's decision, she offered a similar argument, which the juvenile court rejected, finding "Mother makes no argument that the evidence she'd like to present was in existence at the time of trial, which she acknowledged was necessary for her objection to prevail."

{¶ 34} Based on the record and the relevant law, we find the juvenile court erred by denying mother's request for an additional hearing on the new evidence she proffered. Having found reversible error, we must remand the matter to the juvenile court for a hearing on all of the evidence concerning S.T.'s custodial placement, so the juvenile court can make a proper determination of S.T.'s best interest. Accordingly, mother's assignment of error is well-taken.

15.

**{¶ 35}** The judgment of the Erie Court of Common Pleas, Juvenile Division, is reversed and remanded for proceedings consistent with this opinion.

Judgment reversed<br>and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.      _____
                JUDGE

Myron C. Duhart, J.

              _____
Charles E. Sulek, P.J.        JUDGE
CONCUR.

              _____
                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.